THE E. H. POWERS SHOE COMPANY et al., Respondents, v. THE ODD FELLOWS HALL COMPANY, Appellant.

St. Louis Court of Appeals, November 5, 1908.

1. **FORFEITURES: Lessor and Lessee: Equity.** An assignment of a lease without the consent of the lessor, will work a forfeiture of the lease where the lease so provides and the lessee cannot obtain relief in equity against such forfeiture unless it was brought about by the fraud of the lessor or by mistake or accident.

2. ———: ———: ———: **Fraud.** Where a lessor led the lessee to believe it would consent to an assignment of the lease and was silent while the lessee and its assignee made valuable improvements and incurred expense in changing the names, signs, labels, etc., of the business, than attempted to lease to the assignee at a larger rental, this was such double dealing and fraud upon the lessee that it could enjoin the forfeiture of the lease by the lessor on account of the assignment though made contrary to the terms of the lease.

3. ———: ———: ———: **Pleading.** A bill in equity wherein a lessee seeks to restrain the declaration of a forfeiture of his lease on account of his having assigned the lease without the consent of the lessor, should not only allege that the lease was declared forfeited on account of a breach of the terms of the lease, but that it was actually forfeited; if the lessee had done nothing to work a forfeiture, he would have an adequate remedy at law in defense of an action for possession.

4. ———: ———: ———: ———. But where a lessee in seeking to restrain the operation of a forfeiture of his lease stated acts committed by him in violation of the covenant which, without more, would justify forfeiture, but assails the validity of the declaration of the forfeiture based on such acts, on the ground that he was led into doing it by the fraud of the lessor, this was sufficient allegation to grant the relief prayed for, where objection to the petition was not raised by demurrer.

5. ———: ———: ———: ———: **Adequate Remedy at Law.** In such an action injunction would lie although estoppel could be urged as complete defense to an action for possession of the premises by the lessor; equity has jurisdiction to relieve against forfeitures and against fraud in such a case, although there may be a remedy at law in defense of an action for possession because such remedy at law is inadequate.

Appeal from St. Louis City Circuit Court.—*Hon. Chas. Claflin Allen,* Judge.

AFFIRMED.

*H. A. & C. R. Hamilton* and *Henry Higginbotham* for appellant.

(1)   A petition to restrain the prosecution of an action at law and for relief against forfeiture is in the nature of a plea in confession and avoidance, and must allege that petitioner has done or failed to do something which resulted in a forfeiture at law, but that there exists a justifiable and equitable excuse for petitioner's conduct.   Unless the petition alleges both the forfeiture at law and the facts relied upon as an excuse, it is without equity.   Warne v. Wagenor, 15 Atl. 307; Gray v. Railway, 72 C. C. A. 301; 140 Fed. 337; Rogers v.

Cross, 3 Chand. (Wis.) 34; Chadoin v. Magee, 20 Tex. 476; Home Saving & Trust Co. v. Hicks, 116 Iowa 114; Sanders v. Pope, 12 Ves. Jr. 282; Worthington v. Lee, 61 Md. 530; DeWeese v. Reinhard, 165 U. S. 383; Railroad v. Cannon, 49 Fed. 517; Graham v. Carondelet, 33 Mo. 262; Moore v. McCullough, 8 Mo. 401. (2) It is a rule of universal application that legal proceedings will not be enjoined upon grounds which are available to the party in defense of the action at law. This is especially true in actions between landlord and tenant, where equity will not interfere, except in cases of urgent necessity. 1 Spelling on Injunctions (2 Ed.), secs. 42, 66, 67; 1 High on Injunctions (4 Ed.), secs. 75, 89, 98, 101; 1 Pomeroy, Eq. Jur. (3 Ed.), sec. 179. (3) The defenses of waiver and estoppel are available in actions at law, and can be presented in defense of actions commenced before a justice of the peace. Barnard v. German Am. Seminary, 49 Mich. 444; Pitman v. Mining Co., 78 Mo. App. 438; Publishing Co. v. Warehouse Co., 123 Mo. App. 13. (4) Courts of equity will not relieve against the forfeiture of a lease resulting from the lessee's violation of a covenant not to assign the term or part with possession of the demised premises, unless the violation of the covenant was the result of fraud, accident or mistake. 2 Taylor on Landlord and Tenant (9 Ed.), sec. 496; 1 Pomeroy's Eq. Jur. (3 Ed.), sec. 434; 18 Am. & Eng. Enc. of Law (2 Ed.), p. 390; Wafer v. Mocato, 9 Mod. 112; Sanders v. Pope, 12 Ves. Jr. 282; Hill v. Barclay, 18 Ves. Jr. 56; Lovat v. Ranelagh, 3 Ves. & B. 24; Barrows v. Isaacs, 1 Q. B. (1891) 417; Eastern Tel. Co. v. Dent, 1 Q. B. (1899) 835; Sheets v. Selden, 7 Wallace 416; Baxter v. Lansing, 7 Paige (N. Y.) 350.

*Clarence T. Case* for respondent.

(1) The petition should state facts—not conclusions of law. To state such conclusions would be bad

pleading.   Bliss on Code Pleading (3 Ed.), sec. 210;
Dingle v. Pollock, 49 Mo. App. 479; Knapp, Stout &
Company v. St. Louis, 156 Mo. 343.   Water Co. v.
Mooney, 12 Cal. 534.   (2)  The existence of a defense at
law does not make an injunction against the action at
law improper, when for any reason, a court of equity
is a more suitable tribunal for the determination of the
matter, or where equitable remedies unavailing in a
court of law, are necessary.   Farrell v. Farrell, 91 Mo.
App. 665; Pattison v. Booth, 103 Mo. 402; State to use
v. Tiedemann, 69 Mo. 306; Hastings v. Belden, 55 Vt.
273; Gregory v. Diggs, 45 Pac. 261.   (3)  Whenever
by accident, mistake, or fraud, or otherwise, a party
has an unfair advantage in proceedings in a court of
law which must necessarily render that court an instru-
ment of injustice, and it is, therefore, against the con-
science that he should use that advantage, a court of
equity will interfere and restrain him from using the
advantage thus improperly gained.   Damschroeder v.
Thias, 51 Mo. 100.   (4)  Equity abhors a forfeiture, and
a court of equity will always relieve a tenant from an
attempted inequitable forfeiture of his lease by his land-
lord.   This particularly applies where the tenant has
made extensive valuable permanent improvements on the
premises.   Insurance Co. v. Rector, etc., St. George's
Church, 12 Abbott's New Cases, 50; Oil Co. v. Edgell, 48
W. Va. 348; Lundin v. Schoeffel, 167 Mass. 465; Giles
v. Austin, 62 N. Y. 486.

GOODE, J.—The E. H. Powers Shoe Company is
successor to the D. P. Kinsella Shoe Company by change
of name.   The Front Shoes Company is a corporation
which was organized about September 9, 1906, for the
purpose of acquiring the assets and business of the D. P.
Kinsella Shoe Company and assuming its obligations.
It did not do those things because of the refusal of the
appellant, the Odd Fellows Hall Company, to consent

to the transfer of a lease to be mentioned presently; and, in consequence of this refusal, the name of the Kinsella Company was changed to the E. H. Powers Shoe Company. Kinsella, who owned forty-eight of the fifty shares of the stock in the company which bore his name, found himself without adequate capital and wished to sell his interest. He drew the attention of George W. Brown of the Brown Shoe Company to the business, and after a negotiation sold his shares of stock on July 14, 1906, to said Brown and others, for a price which it was agreed should be fixed by taking an inventory of the stock and adding the estimated value of the good will of the business, furniture and fixtures and the leasehold of the store room. The total price thus ascertained was above $23,000, of which sum Brown contributed the larger portion and had most of the shares transferred to Harris H. Johnston for him. The other parties to the purchase were E. H. Powers and M. L. Powers, his wife, and W. F. Armstrong. Johnston and Powers took the management of the business, the former as secretary of the company and the latter as vice president. As Mr. Kinsella had no further interest in the concern, the new owners of the stock wished to conduct the business under a new corporate name, either by transferring it from the Kinsella Company to a distinct corporation, or by changing the name of the Kinsella Company in the statutory mode. The place of business was a storeroom No. 822 Olive street, owned by appellant, Odd Fellows Hall Company. It was part of the building known as the Odd Fellows Hall Building, in which there were other storerooms. The Kinsella Shoe Company held a lease on said storeroom from appellant, dated November 1, 1904, for a term to commence January 1, 1905, and end December 31, 1910, at a rental of $500 a month. It was stipulated in this lease the premises should not be "assigned, let or underlet, or permitted to be used for any purpose other than a retail

store for the handling, keeping and sale of shoes," without the written consent of the lessor; and that no consent would be given for tailoring or merchant tailors, furnishing goods, hats, caps, books, news, stationery, cigars, tobacco, beers or liquors; further, that if the premises should be assigned, let or underlet, or permitted to be used as above mentioned without the consent of the lessor, the latter might enter and relet the same, and for such unauthorized act the lease would become void if the lessor should so elect. There was also a stipulation that in case of a violation of the covenants and conditions of the lease, or the rules and regulations established for the control of the building, the lease should thenceforth, at the option of the lessor, become null and void, and the lessor might enter without notice or demand. In the same clause of the lease the lessee (Kinsella Shoe Company) waived all right to notice to quit possession, or of the intention of the lessor, Odd Fellows Hall Company, to re-enter. Appended to the lease were various rules, regulating the use by tenants of the Odd Fellows Hall Building. One of those rules said no sign, advertisement, etc., should be inscribed, painted or fixed on any part of the outside or inside of the building by a tenant, unless the color, size, style and material of the sign or advertisement was specified by the lessor in writing. After the purchase of Kinsella's stock in the Kinsella Shoe Company, the new management desired to advertise a cut sale of shoes but not to publish the advertisement in the name of the Kinsella Shoe Company. In view of the rule prohibiting tenants from putting out signs or advertisements until the Odd Fellows Hall Company had approved of them, the officers of said company were asked by the officers of the Kinsella Company for permission to advertise by signs in other names than the Kinsella Company. The request was granted and the business advertised for several weeks under the names of Armstrong & Powers

Shoe Company, White House Shoe Company, Front Shoes Company and Front Shoe Store. This was done through July and August, and afterward on September 9th, when the Front Shoes Company had been incorporated to take over the business, Johnston and Powers asked the Odd Fellows Company, through its president Edward Wilkerson, to consent to an assignment of the lease of the storeroom by the Kinsella Company to the new corporation, Front Shoes Company. According to the testimony for respondents, Wilkerson said some of appellant's directors thought the lease had been already forfeited, but he was not in favor of a forfeiture and thought there would be no trouble about the Odd Fellows Company consenting to an assignment; but the question would have to come before the board of directors. What he meant by saying some of the members thought the lease had been already forfeited was that, on account of the purchase by Johnston, Powers and Armstrong of the Kinsella stock, and the instalment of a new management in charge of the company's business, some of the directors of the Odd Fellows Company deemed the lease had been *de facto* assigned by the Kinsella Company without the consent of the Odd Fellows Company.and, therefore, had been forfeited. The testimony of Johnston and E. H. Powers tends to prove they held two or three conversations with Wilkerson and one or more with Hiram Lloyd, a director of the Odd Fellows Company, in which conversations Johnston and Powers were led to believe the directors of the Odd Fellows Company would consent to the assignment whenever the matter was brought before the board; but were told the matter would be acted on formally when the board met. Meanwhile the Kinsella Company, with the knowledge of appellant's officers, made or continued to make improvements on the leasehold in the way of electric wiring, resurfacing the floor, building a balcony in the rear

of the store, and putting new mirrors around the walls. These improvements cost about seventeen hundred dollars, and would become the property of appellant under a clause of the lease at the end of the term. Meanwhile, too, the business was advertised in the name of the Front Shoes Company, checks were drawn, contracts entered into with various persons, and license and insurance policies taken out in that name; packages and cartons in the store were so labeled, and other things were done which indicated the Front Shoes Company was in possession of the stock and premises and had taken over and was conducting the business. These incidents began about September 9th, when the Kinsella Company requested the Odd Fellows Company's consent to an assignment of the lease to the Front Shoes Company, and continued for several weeks pending an answer by the board of directors to the request. On October 18, 1906, the Kinsella Company was notified in writing the Odd Fellows Company had declared a forfeiture of the lease because of its assignment to the Front Shoes Company. As soon as this notice was received, the signs and labels of the Front Shoes Company were removed, those of the lessee, the Kinsella Company, substituted in their places, and, as far as could be done, indications of occupancy of the premises and management of the business by the Front Shoes Company were effaced and the Kinsella Company reinstalled. It acknowledged in writing receipt of the notice of forfeiture by appellant, declared the lease had not been assigned, or the premises let or underlet, that the Kinsella Company was in possession of the store, basement and all parts of the building included in its lease and intended to protect its rights. On November 2, 1906, the Odd Fellows Hall Company instituted an action of unlawful detainer before a justice of the peace against both the Kinsella and the Front Shoes Company to recover possession of the storeroom. In

the complaint filed in said cause the Odd Fellows Company recited the lease to the Kinsella Company for six years from January 1, 1905, and the covenant against an assignment or underletting, without its written consent, and the proviso that if said covenant was violated, it might enter and relet the premises if it should so determine; alleged the Kinsella Company, prior to October 18, 1906, had assigned, let and underlet the premises to the Front Shoes Company without the consent of the Odd Fellows company, and by the determination and election of the latter company, the lease had become forfeited and void, and the Odd Fellows Company had claimed the forfeiture, given notice of the same to the Kinsella Company on October 18, 1906, and demanded possession of the premises. This suit is a bill in equity to enjoin the prosecution of the said unlawful detainer case, to have set aside as a nullity the declaration of forfeiture of the lease, to have E. H. Powers Shoe Company, respondent, as successor to the rights of the Kinsella Company, reinstated in its rights under said lease and for other proper relief. Other facts need to be stated; particularly the doings of appellant with reference to a forfeiture of the lease. When Mr. and Mrs. Powers, Johnston and Armstrong purchased the Kinsella stock in July, 1906, the board of directors of the Odd Fellows Company took into consideration the question of forfeiture of the lease in consequence of the change of management and referred to their attorney the question of whether they could forfeit it. This was about July 21st. The resolution adopted reads as follows:

"After a discussion as to the assignment of existing store leases and consent thereto by this company, it was the sense of the members present that our consent be refused, and on motion of Mr. Hequenbourg, the lease of the D. P. Kinsella Shoe Company was referred to Mr. Henry A. Hamilton, attorney, for his legal opin-

ion upon our right to withhold consent and declare lease forfeited."

Mr. Taylor, secretary and agent of the Odd Fellows Company, testified the occasion of this resolution was that some of the members of the board deemed there had been a change of the tenancy of the store. This was because, he said, alterations in the interior of the room, in the fixtures and the management had been made, but appellant had not inquired about the facts of the managers of the store; their impression being the Kinsella Company had sold out to the Brown Shoe Company. It will be observed from the quoted resolution it was the sense of the members of the board present that consent should not be given to an assignment of leases. On July 31st the board met again and the minutes of the meeting show the attorney "had submitted an opinion upholding the terms of the lease to the D. P. Kinsella Shoe Company." No further action was taken then. The next minute in the records of the Odd Fellows Company regarding the subject is under date of September 11, 1906, and is as follows:

"The matter of lease to D. P. Kinsella Shoe Company was left to the president, it being the sense of the Board that no assignment or transfer of the lease be allowed or permitted."

Taylor swore that when the last resolution was passed, there had been as yet no request by the Kinsella Company for permission to assign the lease, but a request to assign to the Front Shoes Company must have been preferred in a few days. The minutes under date of September 21, 1906, read as follows:

"Mr. Lloyd moved that the action of the board at its last meeting that no assignment or transfer of the lease of the D. P. Kinsella Shoe Company would be allowed or permitted, be reconsidered. The motion carried. The members present thereupon indulged in an informal discussion of the subject of the lease of the D.

P. Kinsella Shoe Company. The president having announced that the lease had been recently presented to him by the Front Shoes Company's officers with the request that our consent be given to its assignment to them. On motion of Mr. McCargo the matter concerning the lease of the D. P. Kinsella Shoe Company was postponed until Tuesday, September 25th, at 4 o'clock p. m. Motion carried."

The first of those resolutions shows permission to assign the lease had been requested and that, in view of the request, appellant's directors resolved to refuse permission. At the meeting on Tuesday, September 25th, the following resolution was adopted:

"An informal discussion was held concerning the lease of the D. P. Kinsella Shoe Company. On motion of Mr. McCargo the question of our differences with the D. P. Kinsella Shoe Company and the Front Shoe Company was referred to Mr. Taylor with instructions to try to effect a compromise. The motion was carried. The matter of compromise was the subject of informal discussion and on motion of Mr. Hequenbourg the matter was postponed until Thursday, September 27, at 4 p. m. The motion carried."

That resolution contained an instruction to the secretary, Mr. Taylor, to compromise the matter. Taylor swore the purpose appellant company had in view was to get a new lease, and get a higher rental on account of the change of tenants. On September 27th, this resolution was adopted by appellant's board:

"On motion of Mr. McCargo, Mr. Taylor was instructed to carry out the wishes of the board as to a compromise of the lease of the D. P. Kinsella Shoe Company relative to its assignment to the Front Shoes Company, but not to declare to the parties any forfeiture of the lease. The motion carried."

It will be seen that though the signs and cartons had been changed from the Kinsella Company to the

Front Shoes Company, and the business was apparently in charge of the latter, Taylor was instructed by appellant's directors not to declare the companies in interest (the Kinsella and Front Shoes Companies) had forfeited the lease. Taylor explained that he personally was in favor of a forfeiture, and this clause was inserted to instruct him not to declare a forfeiture, as the board knew he was in favor of doing and might do, if not restrained. Taylor said he entered the storeroom in question on September 28th and told Powers the directors were considering the expediency of offering the room for rent, and as the Front Shoes Company seemed to be in possession, deemed it right to make the offer to said company first. Powers declined to discuss the proposition then, but on the next day requested permission to appear before appellant's board of directors and was refused. Meanwhile Taylor was pressing the proposition for a new lease to the Front Shoes Company, and he swore appellant's directors designed to compromise the matter in that way, as the board thought a strange tenant was in possession in violation of the lease. On October 1st Taylor told Johnston, as previously he had told Powers, appellant was thinking about offering the premises for rent and deemed it but just, as they (meaning Johnston and his associates) were in possession, to make a new lease to them and let the tenancy continue under new terms if they were found, after investigation, to be satisfactory tenants. Johnston replied they were in possession, had the lease and meant to keep it, but hoped there would be no trouble and appellant would consent to an assignment. Taylor proposed to give a lease for the balance of the term and seven months longer at $7,800 a year; that is, an advance of $1,800 a year or $150 a month. At the same time Johnston tendered the rent in behalf of the Kinsella Company for October, it being payable that day. Taylor refused to accept it, saying he did not think appellant was entitled to any

rent from that concern; evidently meaning, not the Kinsella Shoe Company, in whose name the rent was tendered, but the Front Shoes Company, whom he considered in occupancy, in proof of which he called attention to the name of the Front Shoes Company on the boxes. He swore the proposition for a new lease was declined on October 2d, Johnston again saying they had a lease and were going to hold it, but hoped the parties would continue to be friends. Appellant's board had met again on September 29th and Taylor had reported no progress in the Kinsella matter. The board met again on October 5th and Taylor reported he had not been able to effect a compromise with the Front Shoes Company though he had submitted two propositions, which Johnston had declined, with the request that no further propositions be submitted to the Front Shoes Company. Appellant's board laid the matter over until October 16th. On the 16th the board met and requested its attorney to appear before it the next day, the 17th. On that day the board resolved the lease of the store to the Kinsella Company was void because the lessee had assigned, let or underlet the premises or a portion thereof, without the written consent of the lessor; and the attorney was instructed to draw up papers to get early possession. At the final hearing the court made the temporary injunction against the prosecution of the unlawful detainer suit permanent.

Both parties have treated the case as though transfer of the lease to the new corporation organized to take over the assets of the Kinsella Company and carry on a shoe business in the storeroom, would be an assignment of the term within the sense of the clause against an assignment without appellant's consent. Hence we will assume, without deciding, that this proposition is sound.

1. Equity does not relieve against the forfeiture of a term because of an assignment without the lessor's

133 App—16

consent, unless there are special grounds like mistake or fraud in connection with the assignment. [18 Am. and Eng. Ency. Law (2 Ed.), 374; 1 Pomeroy, Eq. Jur., sec. 454; 2 Taylor, L. and T., sec. 496; 1 M'cAdam, L. and T., 797 and citations; Wolfer v. Macato, 9 Mod., 112; Barrows v. Isaacs, 1 Q. & B. (1891) 471; Grigg v. Landis, 19 N. J. Eq. 350, 68 Am. Dec. 73, note p. 86; Baxter v. Lansing, 7 Paige 350.] An assignment may be absolutely prohibited, because an owner of premises has the right to select his tenant and stipulate against the transfer of a term he grants except with his approval. A breach of this stipulation cannot be compensated in damages, as a failure to pay rent when due, or perform various other covenants, may be; nor does it fall within any of the rules according to which equity will relieve, as of course, against a forfeiture. [Northcote v. Dyke, Amb. 513; David v. West, 12 Ves. Jr. 475; Sanders v. Pope, Id. 282; Hill v. Barclay, 18 Ves. Jr. 56; Griggs v. Landis, supra, note p. 86; Lunden v. Schoeffel, 167 Mass. 465.] It follows respondents do not present a case for relief on the ground that equity courts have jurisdiction to set aside forfeitures—a jurisdiction ranged under the head of Accident, on the ancient theory that defaults in the payment of money, or performance of other conditions, were due to accidental hindrances; which is, of course, commonly a fiction, yet nevertheless the classification is maintained. But a forfeiture of a leasehold term, or other property brought about by the fraud of the party seeking to avail himself of it, or by mistake, or even accident in the genuine sense, will be set aside though the forfeiture may be of a kind which, in general, courts of equity do not relieve against; that is when there is no special fact to make the case one of Fraud, Accident or Mistake, which are sources of equity jurisdiction as well in cases of forfeiture as in other instances. [South Penn. Oil Co. v. Edgell, 48 W. Va. 348; Baxter v.

Lansing, 7 Paige Ch. 35; Sheets v. Seddon, 7 Wall. 416; Hill v. Barclay, supra; Bracebridge v. Buckley, 2 Preices R. 200.] In New York Life Insurance Co. v. Rector, etc., St. George's Parish, 12 Abb. New Cas. 50, it was said all the authorities agree an honest mistake or ignorance of the facts, is good ground for equitable interference against a forfeiture; and, of course, the case for relief will be stronger if fraud appears. [Henry v. Tupper, 29 Vt. 258 and Ransome v. Bentley, 4 Brown, Ch. 415.] The facts before us reveal disingenuous conduct on the part of appellant, which, if not inspired by a fraudulent motive, would work a fraud on the Kinsella Company if its consequences are not obviated. Appellant was watching for an opportunity to forfeit the Kinsella Company's term in order to get a larger rental; a fact that if not admitted point-blank, is hardly denied, and of which the testimony leaves no doubt. In July when a change in the stockholders of the Kinsella Company took place, but its occupancy continued, appellant's directors took under advisement the expediency of declaring a forfeiture and referred the question to their attorney. At the same time they declared it was the sense of those members present at the meeting that consent would be refused to an assignment of the term. This is an important circumstance; for it proves the policy to be pursued in regard to permitting a transfer of the lease, if it should be requested, was settled. But when a request was made in the early part of September, instead of notifying the officers of the Kinsella Company, who were likewise the officers of the Front Shoes Company, that consent would not be given, appellant's officers deferred an answer from time to time on the plea that the matter would have to be decided by the board of directors, though the board had decided it two months before. Meanwhile its president and one of its directors led the officers of the two shoe companies to

believe consent would be granted, and stood by while the shoe companies continued to make valuable improvements and incur expense in changing the names on the signs, labels and cartons. While these changes were going on, appellant's board of directors told its secretary to try to effect a compromise, but not to declare a forfeiture; that is, to give no notice to the Kinsella Company the lease would be forfeited because of a change of occupancy. The so-called compromise to be attempted was no compromise with the Kinsella Company as lessee at all, but an effort to induce the Front Shoes Company to pay $1,800 a year more rent. It thus appears that during the time appellant was postponing an answer to the shoe companies regarding permission to assign the lease, it was negotiating for more rent, and without protest or disapproval, was allowing said companies to do the very acts for which it asserted the lease had been forfeited. A forfeiture was not formally declared until appellant realized it could get no higher rent from the Front Shoes Company; but Taylor's testimony shows appellant intended all along to do this as a last resort, and according to the purpose resolved on in July to refuse consent to an assignment. This being true, its officers who had in charge the duty of arranging with the Kinsella Company, were guilty of double-dealing in giving vague assurances that an assignment would be permitted and doing nothing while the tenant acted on the faith of these assurances. We attach little weight to appellant's consent in July to a display of signs bearing the names of various corporations, though this consent tended to encourage the belief that it cared nothing about the name in which the business was conducted. Without said circumstance there is ample evidence to prove appellant's behavior would damage the Kinsella Company if the lease should be terminated because of what the latter company did toward putting another company in possession, though perhaps this

amounted to an assignment of the lease. [Dickinson Co. v. Fetterling, 69 Minn. 162; Jones, L. and T. sec. 442, p. 503.] If a lessor would forfeit the term for breaches of contract by the lessee, he must be prompt in his declaration of forfeiture after he learns of the breaches, and cannot hold his decision in reserve to speculate for some advantage to himself, while he suffers the tenant to incur expense in the belief that he will not be disturbed. [18 Am. and Eng. Ency. Law (2 Ed.), pp. 382, 383 and citations in notes; Garnhart v. Finney, 40 Mo. 449; Hawes v. Favor, 161 Ill. 440.]

2. One of the propositions mainly relied on by appellant is lack of equity in the petition. The point of this contention is that it omits to allege a forfeiture occurred under the law in consequence of the acts of respondents which caused the forfeiture to be declared. It is said the petition ought to allege sufficient breaches and also that the term was not only declared forfeited because of them, but actually was forfeited. In this connection we are cited to causes supposed to sustain appellant's proposition. [Warne v. Wagoner, 15 Atl. 307; Graham v. Carondelet, 33 Mo. 262.] Appellant, of course, insists a valid forfeiture occurred and therefore relief should be denied, but insists, too, it should be denied because the petition does not say, in so many words, it occurred. The petition states the facts leading to the attempted forfeiture as we have recited them, and avers appellant's board of directors declared the lease forfeited by a unanimous vote on October 17, 1906, on the 18th served respondents with notice of the declaration and later took steps to oust them from the premises. Where relief is sought from a court of equity against a forfeiture of the kind equity relieves against, merely on proof that it had happened, such as one for failing to pay money when due, it may well be that a complainant should state in his petition for relief a forfeiture had occurred. And if the petition shows the

tenant had done nothing on his own motion, or by inducement of the lessor, in breach of a condition, as in Warne v. Wagoner, supra, the complainant would present a case wherein the legal remedy is entirely adequate. Or if an attempt to declare a forfeiture was abortive because of the omission of prescribed steps, and the whole matter is shown of record and is plainly void and casts no cloud on the complainant's title, there is no occasion for recourse to chancery. But these rules cannot be applied where the complaining lessee states acts committed by him which, without more, would justify a forfeiture; but assails the validity of a declaration of forfeiture based on said acts, on the ground that he was led into doing them by the artifice of the lessor. Fraud defeats what would otherwise be valid, and though there may have been a *de facto* transfer of the lease which would have justified appellant in ending the term if it had done right itself, the attempt to end it was invalid if appellant's behavior induced the Kinsella Company to let another tenant into possession. In this event said company, in seeking relief against a possible loss of its term and ouster, and at least a cloud on its leasehold, as consequences of appellant's declaration, was not bound to aver a forfeiture had happened; in other words, that the declaration was warranted. This was the essential issue in dispute, and it was enough to confess the acts on which appellant proceeded, and, in avoidance of their effect, allege behavior of appellant which induced them and sufficed to deprive its declaration of validity.

3. It is further insisted respondents have a complete remedy at law by setting up appellant's conduct as an estoppel in the unlawful detainer action before the justice of the peace. It always has been parcel of the jurisdiction of equity to relieve against forfeitures and also against fraud, and likely this jurisdiction is not lost in such a case as we have before us because the defense of estoppel is available at law. But we prefer to

put the decision of this point on the ground that the relief obtainable by respondents in the unlawful detainer case would be inadequate. The Kinsella Company is not only entitled to defeat said action, but to have its term reinstated. The evidence shows the leasehold is a valuable part of its assets; the declaration of forfeiture casts a cloud on its title which cannot be dispelled except by proof of facts *in pais*, and thereby the value of its assets is reduced, and this is good ground of equity cognizance. [Biddle v. Ramsey, 52 Mo. 153; Tscheider v. Biddle, 4 Dill. 55.] The decree might have done more than continue the injunction against the prosecution of the unlawful detainer case; might have set aside the declaration of forfeiture, and have restored to the Kinsella Company its full rights under the lease for the remainder of the term; subject, of course, to payment of the accrued rents, which were tendered in the petition. The Kinsella Company was entitled to that measure of relief, which none but a court of equity can grant.

The judgment is affirmed. All concur.