[Civ. No. 5956. First Appellate District, Division Two.—October 27, 1927.]

G. R. TAYLOR et al., Respondents, v. UNITED STATES FIDELITY & GUARANTY CO., Appellant.

Lewis, Fleming & Goodwin, John M. Martin and Clarence E. Fleming for Appellant.

McWhinney & Clock and H. S. Clewett for Respondents.

PRESTON (H. L.), J., *pro tem.*—This is an appeal by the defendant, United States Fidelity & Guaranty Company, a corporation, from a judgment entered against it in favor of plaintiffs, based upon a bond and undertaking executed by said defendant as surety for the United States Royalties Company, a corporation.

The case was tried by the court sitting without a jury.

The facts not in dispute are these: The plaintiffs were the owners of two lots in the Signal Hill Oil District at Long Beach, Los Angeles County, California, and on February 3, 1923, plaintiffs, as lessors, made and executed an oil and gas lease covering this property to said United States Royalties Company as lessee. This lease was never recorded but at all times held in escrow by the Long Beach National Bank, to whom it was delivered by the parties thereto with certain written instructions. By the terms of said lease it was provided, among other things, that said lessee would within ninety days following the furnishing of a certificate of title showing the premises vested in the lessors, commence the actual drilling of a well on some portion of the leased property; or, at its option, to be entitled to a further extension of time for a limited period by the payment of certain additional rentals as provided in the lease.

It was further provided in said lease as follows: "As a guarantee of good faith and of the actual drilling of a well under this lease, the lessee shall, within five days after the furnishing of a certificate of title by the lessors, as above provided, likewise place in escrow with some bank or trust company holding said lease, either a cash deposit of $5,000, or a surety company bond in the sum of $5,000, conditioned and with instructions that if the lessee fails to commence the actual drilling of a first well on said premises within the time and in accordance with the provisions of said lease, *unless and within said time said property is disproven as oil land and this lease abandoned by lessee and a quit-claim deed delivered to lessors,* the said $5,000 cash deposit, or the sum of $5,000 under said bond, shall be paid to parties of

the first part and second part (plaintiffs and respondents) share and share alike, *as additional rental for said premises hereunder,* and with the further provision that upon the actual spudding in of a first well on said premises in accordance with the provisions of this lease, and within the time herein provided, the said cash deposit or said bond, as the case may be, shall be returned to lessee. . . . ''

Said lessee, United States Royalties Company, in accordance with the above provisions of said lease, elected to, and did, deliver a bond of $5,000, executed by this defendant and appellant, as surety, in lieu of the cash deposit of $5,000. The certificate of title to be furnished by the lessors under the lease was delivered on February 3, 1923, and the ninety-day period within which the said United States Royalties Company was to start drilling operations began to run on that date, making the last day of said ninety days fall on May 4, 1923.

The said United States Royalties Company never commenced drilling operations of any kind on the leased property, but on April 28, 1923, notified the Long Beach National Bank, in writing, that it was convinced that the leased property had been ''disproven'' as oil lands and requested the bank to return the lease to the lessors and cancel the entire transaction. Said bank in turn notified the lessors of the action of said United States Royalties Company, the lessee. Thereafter, the said United States Royalties Company offered to execute a quitclaim deed to the lessors, surrendering any interest it might have in the leased premises. This offer was not accepted by the lessors, but, on the contrary, they insisted that the property had not been ''disproven'' as oil land and demanded of said United States Royalties Company that drilling operations be commenced within the time specified in the lease, or pay the additional rental of $5,000 provided for in said lease and secured by said bond. Neither of these demands was complied with by said United States Royalties Company, and thereafter the lessors, who are the plaintiffs and respondents herein, instituted this action against the United States Fidelity & Guaranty Company upon said bond.

The trial court, after hearing the testimony of all the witnesses in the case, found that said leased premises had not been ''disproven as oil lands prior to May 4, 1923,'' and

gave judgment for plaintiffs for $5,000, the amount of said bond, together with interest thereon at seven per cent per annum from the fifth day of May, 1923.

Appellant contends that this finding is not supported by the evidence; on the contrary, respondents contend that the evidence is ample to support this finding of the trial court.

The law, of course, is well established that any finding of the trial court upon conflicting evidence is conclusive, and all reasonable inferences are to be indulged in support of such finding. (*Treadwell* v. *Nickel,* 194 Cal. 243 [228 Pac. 25]; *Wilbur* v. *Wilbur,* 197 Cal. 7 [239 Pac. 332].)

The burden is upon appellant, who claims error, to show its existence. (Hayne on New Trial and Appeal, Rev. ed., p. 1574; *Wilbur* v. *Wilbur, supra.*)

When appellant contends, as it does in the case at bar, that any particular finding is not supported by the evidence, our power begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the trial court. If upon any material point the testimony is in conflict, it must be assumed that the trial court resolved the conflict in favor of the prevailing party. (*Gjurich* v. *Fieg,* 164 Cal. 429 [Ann. Cas. 1916B, 111, 129 Pac. 464]; *Treadwell* v. *Nickel, supra.*) Therefore, the sole question presented on this appeal is whether there is substantial evidence, contradicted or uncontradicted, which in and of itself will support the conclusion reached by the trial court that the land in question had not been disproven as oil land within ninety days from and after February 3, 1923.

Appellant while recognizing the above-mentioned well-established rules, insists that there is no dispute or conflict in the evidence and that only one conclusion can be drawn from all the evidence, and that conclusion is that the land was disproven as oil land prior to May 4, 1923, and the trial court having reached a different conclusion the judgment should be reversed. We cannot agree with this contention. The one disputed question of fact in the case, to wit, the character of the land, whether oil-bearing or nonoil-bearing, was not a fact capable of demonstration prior to May 4, 1923, but was one depending entirely upon the opinion of witnesses and circumstances existing at and prior to that date.

At the trial both sides offered the testimony of experts in the oil industry in support of their respective contentions regarding the oil-bearing character of the land in question. Plaintiffs produced only one witness who testified directly upon this question, while defendant produced four or five, but the mere number of witnesses, of course, has no bearing, if the one witness produced by plaintiffs was sufficient to produce conviction in the court's mind against a greater number testifying on behalf of defendant. (Sec. 2061, subd. 2, Code Civ. Proc.)

The plaintiff's witness was Mr. Martin Van Couvering, a petroleum engineer. No point was urged whatever as to the qualifications of Mr. Van Couvering as such engineer. He produced, and there was received in evidence, a map prepared by him of a portion of the Signal Hill oil field section, near the land in question, showing the condition of the various wells in that locality on the date in question, and his testimony was that he had done either all or a part of the engineering work on a great many of the wells shown on the map. The wells upon which he had done work were enumerated by the witness, which amounted to more than thirty in number. This witness further testified, positively, as to the condition and depth of a great number of wells on May 4, 1923, which were adjacent to the property in question, and his testimony shows that he had a very accurate knowledge of the exact condition of the wells in the Signal Hill oil field on and prior to May 4, 1923.

The testimony shows that the land in question is located on the northwest corner of Hill and Walnut Streets at Signal Hill. Mr. Van Couvering testified that the general trend of the oil structure at Signal Hill is northwest and southeast, and that at the time the lease was made numerous wells were drilling, both to the north and to the east of the land in question, and on the date the lease was executed (February 3, 1923) the extent of the field to the southwest had not yet been determined, and at that time the lands of plaintiffs were potential oil property.

Mr. Van Couvering further testified, among other things, that on May 4, 1923, the Old Colony Trust Company's No. 1, located only 250 feet from the land in question, was drilling at a depth of 1,780 feet. The testimony of all the witnesses was to the effect that the first showings of oil, or as they

term it, "top of the oil horizon," was not expected to be found until a depth of 3,500 feet, or more, had been reached. Mr. Van Couvering also testified that the Petroleum Midway Company's Clark No. 1, located about 150 feet north of the Old Colony Trust and the same distance from the lands of the plaintiffs, was likewise, on May 4th, drilling at a depth of 1,780 feet, and that the Harmony Dobyns No. 1, located somewhat farther from plaintiff's property, had at that time reached a depth of 3,585 feet which, under the evidence, was about where they would expect to pick up the oil sand, but there is nothing in the evidence to show whether any production test had been made at that depth, or any effort made to bring the well in. This same witness also testified concerning specific conditions of numerous other wells in the field, their depth, production, etc., and testified that in his opinion, on May 4, 1923, the land in question had not been disproven as oil land, and that he was still at that time in doubt as to how far to the southwest the oil-bearing horizon might extend.

Under cross-examination, Mr. Van Couvering was questioned as to the meaning of the word "disproven" in a commercial or trade sense, and the answer given was as follows: "A. Well, to me it means, did I think that it was quite sure that they would not make it pay if they drilled a well there. That is what I think you mean and I did not know that, at that time—that that was the case. The Court: Does it not mean this: That judging from the development of surrounding properties it had not been established to your satisfaction that it was not oil producing property, is that what you mean A. Your Honor is correct. Q. You just used the word 'oil producing'; you mean 'oil producing in paying commercial quantities?' A. Yes."

The testimony also shows that subsequent to May 4, 1923, there were a number of cases in which new rigs were erected adjacent to the property in question, particularly the H. C. Noonan No. 1, only 270 feet distant; The California Signal Petroleum Syndicate 4; Horseshoe 2; The Black Star Oil Company 2, and the J. L. Benwell, Inc., well No. 1, and it was also shown on cross-examination of one of the witnesses for defendant that even up to the first part of November, 1923, not a single well in the portion of the field adjacent to the property in question was officially abandoned or a single

rig dismantled, while, on the contrary, several new rigs were erected during that period of time.

For appellant, Mr. Templeton, Mr. Swarts, Mr. Shaver, and Mr. Soyster, all qualified experts, testified that in their opinion the property was disproven as oil lands during the latter part of April, 1923, and prior to May 4, 1923, and each of these witnesses explained in detail the reasons for their conclusions. These witnesses were also examined and cross-examined in detail as to the operation, depth, and condition of the various other wells in the immediate vicinity, etc.

Appellant lays great stress upon the fact that in the cross-examination of plaintiffs' witness Van Couvering he admitted that all of the wells, about which he had testified, proved to be nonproducing, and that subsequent developments demonstrated that the land in question was nonoil-bearing in commercial quantities, as contended by appellant. In fact, it was stipulated by plaintiffs at the time of the trial, which occurred in November, 1924, that many months after May 4, 1923, it was definitely established that the land in question was nonoil-bearing. These admissions would certainly appear to us to have the effect of seriously impairing the value of Van Couvering's opinion theretofore given to the court that on May 4, 1923, said lands had not been disproven as oil land, but by these admissions alone we cannot say, as contended by appellant, that the entire testimony of the witness Van Couvering is valueless and raised no conflict in the evidence. The weight to be given the entire testimony of Van Couvering, as well as that to be given the testimony of all the other witnesses examined in the case, was a matter solely to be determined by the trial court, and it is obvious, from the conclusion reached by the trial court, that it gave more weight to the opinion of Van Couvering, notwithstanding his admissions that subsequent developments showed that his opinion was erroneous, than it gave to a contrary opinion of all five of the expert witnesses for appellant.

We have not set forth all the evidence adduced at the trial, but have examined the entire record with care, and we are of the opinion that there is substantial evidence to sustain the findings of the trial court; therefore, such findings are conclusive on appeal.

■ Appellant has argued that the judgment here represents a forfeiture from which it should be relieved. If it is

in the nature of a forfeiture, no way is pointed out in which such fact should change the judgment in this case under the record. It cites section 3275 of the Civil Code, to the effect that one may be relieved from a forfeiture, except in case of a grossly negligent, wilful, or fraudulent breach of duty. The breach here was spontaneous and voluntary, and, therefore, wilful within the meaning of the interpretation of that section given in *Parsons* v. *Smilie,* 97 Cal. 647, 654, 655 [32 Pac. 702].

Appellant did not by his answer plead any equitable matter, nor ask the court to be relieved as from a forfeiture under Civil Code, section 3275 (*Clifford* v. *Fleshman,* 65 Cal. App. 762 [225 Pac. 45]), nor has it offered to pay actual damages nor suggested what admeasurement of actual damages it is possible to apply for its breach of the condition. (See *Parsons* v. *Smilie, supra.*)

We think the judgment of the trial court must be affirmed, and it is so ordered.

Sturtevant, J., and Koford, P. J., concurred.