[Civ. No. 15893. Second Dist., Div. One. Mar. 17, 1948.]

EVA WILSON, Plaintiff and Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a Banking Corporation) et al., Defendants; ETHEL M. MOORE, Defendant and Appellant; CLYDE J. BROADNAX, Respondent.

Sidney Fischgrund and Samuel H. Sherman for Plaintiff and Appellant.

J. Q. Gilchrist and John L. Mace for Defendant and Appellant.

J. Marion Wright and Owen E. Kupfer for Respondent.

BARTLETT, J. pro tem.—This is an action by plaintiff, Eva Wilson, for money had and received, against the defendants to recover from them certain payments which she had made on the purchase price of real estate. There is also a cross-complaint by Clyde J. Broadnax, defendant and respondent, against Ethel M. Moore, the seller of the property in question, to recover a real estate commission. The judgment was in favor of the defendants and against the appellant Eva Wilson and in favor of Clyde J. Broadnax on his cross-complaint against Ethel M. Moore.

The defendant Ethel M. Moore was the owner of an apartment house in the city of Los Angeles which she was offering for sale. The defendant Clyde J. Broadnax, a licensed real estate broker, secured an offer to purchase the apartment from

Eva Wilson and accepted a $200 deposit on account of the purchase price from Eva Wilson, and issued his receipt to her.

On October 9, 1944, the seller, Ethel M. Moore, and the buyer, Eva Wilson, executed and deposited escrow instructions with the Security-First National Bank of Los Angeles for the sale and purchase of this apartment house which instructions constitute a contract of purchase and sale. This contract provided for a purchase price of $40,000, $14,000 to be paid in cash by the buyer and the balance to be secured by first and second trust deeds to be executed by the buyer. The escrow instructions further provided for a payment of a commission of $2,000 to the broker upon certain conditions which will be referred to later. The buyer deposited in this escrow a total sum of $2,750 which sum was at the time of trial retained by the defendant bank as stakeholder pending a final judgment in the case. On February 23, 1945, the buyer served written notice cancelling the escrow. On March 2, 1945, the seller notified the buyer in writing that the seller was ready to perform and that the buyer would be bound by the agreement and the buyer's deposit would be forfeited if she did not proceed with the escrow by March 6, 1945. The buyer did nothing to further consummate her agreement to purchase, and on June 13, 1945, filed this complaint for money had and received.

There are two separate appeals: the first is an appeal by the buyer, Eva Wilson, from the entire judgment; the second is an appeal by the seller, Ethel M. Moore, from the judgment in favor of the broker Clyde J. Broadnax, which awarded him a commission. The defendant, Security-First National Bank of Los Angeles, being a mere stakeholder, is not a party to this appeal. As the issues in these two appeals differ, they will be considered separately.

### The Appeal of the Buyer Eva Wilson

In view of certain arguments made by appellant, there are some additional matters which are pertinent in a consideration of her appeal. The buyer does not claim that there was any fraud or misrepresentation upon the part of the seller or the broker. Neither is there any contention that there was any waiver by the seller of any of the conditions of the contract or that there was any conduct on her part which would constitute an estoppel.

By February 1, 1945, the buyer had paid $2,975 of the $14,000 she had agreed to pay. She never did execute either

of the two trust deeds which were to cover the balance of the purchase price of $40,000.

On February 18, 1945, the appellant buyer asked for a further extension of time to complete the purchase, which the seller told her she would grant, and the buyer was to go to the bank and sign amended instructions concerning it. Instead of doing so, on February 23, 1945, she served a written notice cancelling the escrow and demanding a return of the money which she had paid in. The seller was never in default, deposited in the escrow the deed and other documents, and did all the things which she agreed to do. She refused to join with the buyer in the cancellation of the escrow and on March 2, 1945, notified the buyer to comply with her agreement by March 6, 1945, or the monies paid would be forfeited. The buyer did nothing between those dates or later until June 13, 1945, when she filed this action for money had and received. She has neither tendered to respondent or into court the payments due, nor has she made or offered to make full or any compensation to the seller in any manner other than an offer to pay the escrow fees.

The buyer testified as to her reasons for not going on with the contract as follows:

"Q. Isn't it a fact that the reason you never went through then with this transaction was because you couldn't raise the money? A. No."

And later on in her testimony:

"Q. When Mrs. Moore had agreed to give you an extension of time of 90 days why didn't you show up the next morning and sign up for it? A. Because I didn't want the property."

The trial court decided this case strictly in accordance with the rule laid down in the leading case of *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199], that the buyer under a contract for the sale of real estate cannot after her default, without excuse therefor, maintain an action to recover the monies paid under the contract. So far as the law as set forth in this decision is concerned, its repeated affirmation in a long uninterrupted series of cases has caused it to become settled doctrine under the rule of *stare decisis*. Appellant seeks to avoid the effect of these decisions by the following contention: "Under section 3275 of the Civil Code, plaintiff in the instant case is entitled to recover the full amount of the installments paid on condition that she make 'full compensation to the other party.'" The section referred to reads as follows:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty."

The buyer's contention instantly raises the question as to whether or not her conduct in breaking the contract was wilful. The word "wilful" as used in civil cases has been defined many times. In *Davis* v. *Morris*, 37 Cal.App.2d 269, at page 274 [99 P.2d 345], the court considers the meaning of the word and says:

" . . . In the case of *May* v. *New York Motion Picture Corp.*, 45 Cal.App. 396, 404 [187 P. 785], it was held that the term 'wilful' in its ordinary use, merely means that one intentionally fails or refuses to perform an act which is required to be done. It is said in that regard:

" 'In civil cases the word "wilful" as ordinarily used in courts of law, does not necessarily imply anything blameable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done, was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.' (Citing cases.)"

The buyer in the case before us knew what she was doing, intended what she was doing, and was a free agent. The term has been considered not only generally but as it is used in section 3275 of the Civil Code. In *Parsons* v. *Smilie*, 97 Cal. 647 [32 P. 702], the word as used in that section is given the same meaning as voluntary, spontaneous, intentional, designed.

The holding in *Taylor* v. *United States Fidelity & Guarantee Co.*, 86 Cal.App. 382, 390 [260 P. 898], is that the party could not be relieved from a forfeiture as "The breach here was spontaneous and voluntary, and, therefore, wilful . . . . "

In *Crowell* v. *City of Riverside*, 26 Cal.App.2d 566 [80 P.2d 120], the breach was of an inhibition against subletting. It was contended that the provisions of section 3275 of the Civil Code would relieve against a forfeiture. Among the grounds stated by the court as to the applicability of this section in the premises, after stating that wilful as used in this section is to be understood in its ordinary sense of "voluntary or spontaneous," said: "Moreover, the subletting was voluntary, intentional, and so deliberate as to be evidenced by a carefully

drawn written instrument. In these circumstances it would be impossible to treat it as otherwise than 'wilful.' "

In the instant case, the breach of the contract was voluntary, intentional, and so deliberate as to be evidenced by a carefully drawn written instrument. From the buyer's own testimony and the other evidence in the record we must, therefore, conclude that this contention is not tenable.

There is another aspect of the matter which deserves consideration. In her letter to the bank breaching the contract, the appellant offered to pay the escrow charges. Other than that she has offered to do nothing. As we have seen, she has not offered to make full or any compensation to the other party, has made no tender into court or to the other party or proven that she is ready, willing and able to make the payment due. In a case where exactly that situation existed and the buyer asked that he be relieved from a forfeiture under the provisions of section 3275 of the Civil Code, the court said: "This contention is sufficiently answered by the fact that appellant has done nothing to entitle him to relief under that section. He has not made or offered to make 'full compensation' to respondent. He had made neither a tender to respondent nor into court and has failed to plead or prove that he is ready, willing and able to make the payments due." (*Christin* v. *Story*, 119 Cal.App. 326, 333, 334 [6 P.2d 301].)

Appellant's next contention is stated thus: "Where the parties to a contract for the sale of realty make an agreement as to the amount payable as liquidated damages, in the event of default, such an amount controls, and the court may not fix an arbitrary amount as damages in contravention to the terms of the agreement made by the parties." This contention cannot prevail as it is immaterial whether or not there was such a provision in the contract. The right of the seller to retain the amounts paid on the purchase price exists regardless of any provisions in the contract for forfeiture or liquidated damages. The contention that an agreement for liquidated damages was illegal was made in the case of *Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804 [165 P.2d 729]. The court there said (p. 812):

"A complete answer to this contention is found in *Glock* v. *Howard, etc. Co.,* 123 Cal. 1, . . . wherein . . . the court says: 'When an equitable showing is not made to excuse the breach, the vendor has the right in equity, as he always has at law, to retain the moneys paid by the vendee. Therefore, we have said that it matters not in such contracts that the parties

have declared that the vendor may retain the moneys paid as stipulated damages. The name which the parties thus give does not alter the fact nor change the vendor's rights. If it be said that the clause for stipulated damages is void, still the vendor is entitled to retain the money.'" (Citing additional cases.)

See also *Martinelli* v. *Hogrefe,* 123 Cal.App. 438 [11 P.2d 412] ; *Winter* v. *Kitto,* 100 Cal.App. 302 [279 P.1024].

THE APPEAL OF SELLER ETHEL M. MOORE FROM THAT PORTION OF THE JUDGMENT AWARDING A COMMISSION TO THE BROKER

█ The broker's claim for a commission is based upon the seller's agreement to pay a commission contained in the escrow instructions signed by her. The appellant concedes that a broker's claim for a commission can be based upon such an agreement and also that the broker produced a buyer who by signing the escrow instructions executed an enforceable agreement to purchase which was also signed by the seller. However, she contends that portion of the escrow instructions which provided for the payment of the broker's commission is conditional upon a contingency which never occurred. The portion of the escrow instructions referred to reads as follows :

". . . Pay at close of escrow any encumbrances necessary to place title in the condition called for and the following : Pay commission of $2,000.00 to Clyde J. Broadnax (Real Estate Broker's License No. 3025), . . . "

The terms of the contract are definite and certain and are capable of but one construction. The event upon which the payment was conditioned never occurred as the escrow was never closed. The cases of *Hargrave* v. *Moody,* 56 Cal.App. 498 [205 P. 890], and *Coulter* v. *Howard,* 203 Cal. 17 [262 P. 751], hold that in cases such as this one, where the payment of a commission to the broker is dependent upon an unfulfilled condition, the broker cannot recover. Respondent attempts to distinguish these cases from the one here by calling attention to the fact that in *Coulter* v. *Howard, supra,* the wording of the condition was "at close of escrow but only out of funds then due and payable to me out of this escrow." And in *Hargrave* v. *Moody, supra,* it was "from proceeds of escrow when completed." Far from distinguishing these cases from the one at bar, the quoted words show how similar they were to the words in the contract in the instant case, and the applicability of the principle of law set forth in those cases to the situation existing here. The law governing contracts of this character

is clearly set forth in *Smith* v. *Frans Nelson & Sons, Inc.*, 214 Cal. at page 295, [5 P.2d 427], as follows:

"The case of *Coulter* v. *Howard,* 203 Cal. 17 [262 P.751], is authority for the proposition that the statute of frauds (sec. 1624, subd. 6, Civ. Code) may be satisfied as to the employment of a real estate broker by resort to appropriate language in escrow instructions, if signed by the party sought to be charged. But it is likewise evident that, unless overcome by some direct attack in equity, the broker must accept the apposite burdens and conditions contained in the letter of authority which thus confirms his employment. And where, as here, the legal effect of the contract is to provide for the payment of a commission only upon completion of the escrow transaction, so as to invest the defendant with a clear title to the property it is to receive in exchange for its own, the commission does not become due where through no fault of the defendant, the transaction is never completed.

"In *Coulter* v. *Howard, supra,* the defendant was held liable because her own act prevented consummation of the escrow transaction. Here we have the reverse situation. The party sought to be charged was willing to complete the exchange and but for the other party thereto, would have done so. Said other party, however, failed or refused to carry out his covenants. The broker's claim in this case must therefore fall with the collapse of the other negotiations. It is not permissible for the broker to resort to the escrow document for a ratification of his employment and then, in contradiction of the other provisions thereof, establish by parol a different contract as to the conditions under which the commission is to become due. To permit such a course would be to defeat the very object the statute of frauds was designed to accomplish."

It follows that the broker in the instant case is not entitled to a commission.

As to the appeal of the appellant, Eva Wilson, the judgment is affirmed. As to the appeal of the appellant, Ethel M. Moore, from the judgment on the cross-complaint, the judgment is reversed.

Doran, Acting P. J., and White, J., concurred.

A petition for a rehearing was denied April 7, 1948, and respondent's petition for a hearing by the Supreme Court was denied May 13, 1948. Shenk, J., and Schauer, J., voted for a hearing.