[Civ. No. 7554.   Third Dist.   Aug. 22, 1949.]

ANGELINA AMORUSO, Appellant, v. ARCHIE L. CARLEY et al., Respondents.

Frank L. Murphy for Appellant.

Elliott, Atkinson & Sitton for Respondents.

ADAMS, P. J.—■ On October 21, 1944, Angelina Amoruso entered into a contract to buy from Archie L. Carley and Gertrude A. Carley, about 3½ acres of land in the Carmichael Colony in Sacramento County, for $650. One hundred dollars was paid on execution of the agreement, and the balance was to be paid in monthly installments of $12.50 or more on the first day of each month beginning December 1, 1944, including interest, the buyer to pay all taxes and water

assessments. The contract provided that if the buyer failed to comply with its terms the sellers were released from all obligations to convey, and the moneys theretofore paid were to be retained by them as liquidated damages. It also provided that time was of the essence of the agreement.

Mrs. Amoruso went into possession and made payments amounting to $179.82 as follows: February 11, 1945, $37.50; April 30, 1945, $37.50; August 30, 1945, $62.50, plus $17.32 for water taxes which the sellers had paid; November 25, 1945, $25. In March, 1946, she gave defendants' agent a check for $50 signed by her daughter, which check was dishonored, payment having been stopped. No other payments were made, taxes for the years 1944 and 1945 were permitted to become delinquent, and irrigation district taxes amounting to $68 were not paid until December 20, 1946, after the sellers had given Mrs. Amoruso notice of termination of her rights under the contract. On numerous occasions the sellers' agent called Mrs. Amoruso's attention to her delinquencies, and on October 18, 1946, a letter was mailed to her at her Sacramento address by attorneys representing the Carleys, which letter notified her she was in default and that unless all delinquent payments were made within 10 days the contract would be declared forfeited and the moneys paid by her retained for the use of the premises. On October 30, 1946, said attorneys sent to her by registered mail a letter similar to the former one, but notifying her that unless all delinquent payments were made on or before November 5th the contract would be terminated. This letter was returned to the writer as "unclaimed," whereupon these attorneys secured the services of a process server, who, after several calls at Mrs. Amoruso's said residence, succeeded in serving her with the aforesaid letter on November 4th. No action was taken by Mrs. Amoruso, and on November 18th, the same attorneys mailed to her a notice advising her that since nothing had been done by her after service of notice on November 4th her rights under the contract were terminated. Receipt of this letter is admitted. On December 18th, Mrs. Amoruso and her son went to the home of the Carleys (whom she had not before met), where she told Mr. Carley she had money in her purse to pay the balance due; but she made no tender of it. That same day she filed this action asking specific performance of the contract, and that she be relieved of default by reason of any alleged failure to comply with the provisions thereof. Defendants filed their answer and a cross-complaint praying

that their title to the property be quieted. Plaintiff answered the cross-complaint and after the trial of the issues the court made findings in favor of cross-complainants, and entered judgment accordingly.

In her complaint plaintiff alleged that she had duly performed under the contract and on or about November 18, 1946, had tendered to defendants payment in full, but such payment had been refused. She also alleged that she had, on that day, deposited in a bank, for defendants, $415 which she computed to be amount due defendants, and was ready, able and willing to pay any additional amounts found to be due them. This allegation as to the date is incorrect since the call on Mr. Carley, and the deposit in the bank, were made December 18th. She also alleged that she had placed improvements on the property of the value of $6,000; that any default or forfeiture on her part was "without gross negligence, wilful or fraudulent conduct" on her part, and that the defendant had waived same.

The evidence adduced revealed that the only improvements placed upon the property consisted of a fence costing, as plaintiff said, about $100. It also showed that she did not, on December 18, 1946, actually tender money to Mr. Carley but stated to him that she had the money in her purse; that both such alleged tender and deposit were made only after defendants had terminated the contract; and that though she was advised by defendants on November 4th that the contract would be terminated if she did not act promptly, she did nothing for some six weeks thereafter, and presented no excuse for her delay or for her failure to comply with the terms of her agreement or to heed the repeated warnings of defendants' agent as to her defaults in payment.

In its findings the trial court found that in the main the allegations of plaintiff's complaint were untrue, that her deposit of moneys in bank was made after termination of the contract and was insufficient in amount; that without just cause she had defaulted in her payments, and that such default was not in anywise waived by the sellers, nor was the "time is of the essence" provision waived. In the judgment it was, however, provided that as a condition thereof the defendants should pay to plaintiff $124.52, the amount of taxes and water charges which she paid after termination of the contract.

On this appeal from the judgment appellant admits her delinquency in payments but argues that her so-called tender

on the day she filed her action had the effect of curing her default regarding the 11 installments then unpaid, and that the deposit in the bank kept such tender good; that the notice of time within which she was called upon to act by the notice she received November 4th was insufficient; that there was no showing of grossly negligent, wilful misconduct and fraudulent breach of duty such as is contemplated by section 3275 of the Civil Code before a forfeiture is enforced; and that the judgment results in undue enrichment of defendants.

Since the briefs were filed in this case the Supreme Court has rendered its decision in *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367], and this court has decided the case of *Kammerer* v. *Woodson, ante,* p. 220 [208 P.2d 372], cases involving principles of law applicable to the case now before us. The case of *Myers* v. *Garaventa, post,* p. 428 [209 P.2d 135], this day filed, involves like questions, to wit, whether where contracts for sale of real property provide for installment payments and provide that time is of the essence thereof, there has been an effective waiver of the time provisions of the contract, or the seller has, by his conduct, estopped himself from reliance thereon, and whether, under the evidence in the case, it has been shown that the purchaser's defaults are excusable, or whether they show ''a grossly negligent, willful, or fraudulent breach of duty.''

In *Barkis* v. *Scott* the evidence showed that the purchase price involved was $6,150, $700 of which was paid on execution of the contract, and the balance with interest at 6 per cent was payable in monthly installments of $42.50. The buyers made 57 of such payments—a total of $2,422.50—including payment due May 15, 1946. They also made improvements on the property of the value of $3,114.47. Checks for June and August payments were returned by the bank, but the July check was honored. On August 26, 1946, the seller notified the buyers that he had elected to declare a forfeiture for defaults in the June and August payments. The evidence showed that the buyers were not aware that the June and August checks had been dishonored until they received the seller's notice of forfeiture. It also showed that they immediately tendered certified checks for the amounts due, and then opened an account, under the provisions of section 1500 of the Civil Code, depositing therein all amounts due under the contract. The dishonor of the checks of June and August as explained by the buyers was due to their failure to make usual

deposits because of the husband's illness, and both defendants testified they believed they had sufficient funds on hand to cover such checks. Under those circumstances the court held that the defaults could not be said to be wilful or to be due to gross negligence or fraudulent breach of duty; and, furthermore, that in view of the payments made to the seller and the improvements made by the buyer, the former would, by a forfeiture, realize more than the benefit of his original bargain. It was accordingly held that the forfeiture should be denied.

In the Kammerer case delay in payment of three installments of $100 each on the contract price of land sold for $15,000, upon which a total of $2,700 had been paid, and default in the payment of a small amount of taxes and insurance were held by the trial court not to constitute such a grossly negligent, wilful or fraudulent breach of the contract as justified a forfeiture; that under the special provisions of the agreement the buyers were really in default of but one payment regarding which forfeiture could be declared; and as to the taxes they were not aware of the amount chargeable to them since taxes upon the property contracted for and certain personal property were not segregated, and no demand for payment of same had been made upon them, as was required by the contract. Tender of all amounts due was made by the buyers, and this court affirmed the judgment restoring them to the benefits of the contract on condition that they pay to the sellers the sum of $1,198.54, which covered installments, interest, insurance and taxes to the date of judgment. In that case the appeal was on the judgment roll alone, and what excuses for their delay plaintiffs presented at the trial were not before us, and we assumed that the evidence was sufficient to support the findings of the trial court and justify the relief from default granted by it.

In *Myers* v. *Garaventa*, not only were the facts different from those shown here, but a valid tender of the full amount due was made immediately after notice was given, in conformity with a provision of the contract that if buyers tendered to seller the full amount due, owing and unpaid, within 10 days after notice of retaking by the seller, the seller should execute proper instruments vesting title in buyer. Also the judgment of the trial court which heard and saw the witnesses was in favor of the plaintiffs, and all intendments are in favor of that judgment.

The instant case, however, differs in very material respects from the foregoing ones. Here plaintiff, from the very beginning, delayed the payment of installments of but $12.50 per month. At the time forfeiture was declared she had made no payments for 11 months. The only improvement she made upon the property was the construction of a fence costing no more than $100; she was shown to have had other real estate dealings so was not unfamiliar with them, and she had been constantly urged by the sellers' agent to make her payments; she permitted the taxes to become delinquent and failed to pay water assessments; she apparently evaded service of notice upon her, and even after notices were finally served did nothing to relieve her default until the day this action was filed; the offer which she made on that day to pay the overdue installments was of an insufficient amount, as was the deposit in bank; she was in possession of the property, but throughout the life of the contract her conduct plainly evidenced gross negligence and wilful conduct which the trial judge who heard and saw the witnesses was fully justified in holding was sufficient to justify the forfeiture.

As to what constitutes wilful conduct and gross negligence see *Parsons* v. *Smilie*, 97 Cal. 647, 654 [32 P. 702], *Crowell* v. *City of Riverside*, 26 Cal.App.2d 566, 581 [80 P.2d 120], *Pfitzer* v. *Candeias*, 53 Cal.App. 737, 740 [200 P. 839], and *Taylor* v. *United States Fidelity & Guaranty Co.*, 86 Cal.App. 382, 390 [260 P. 898]. Gross negligence was said, in *Krause* v. *Rarity*, 210 Cal. 644, 655 [293 P. 62, 77 A.L.R. 1327], to be "the exercise of so slight a degree of care as to justify the belief that there was an indifference to the things and welfare of others," and "that want of care which would raise a presumption of the conscious indifference to consequences." Also, see *Meek* v. *Fowler*, 3 Cal.2d 420, 425 [45 P.2d 94], and *Browne* v. *Fernandez*, 140 Cal.App. 689, 693 [36 P.2d 122], where the court said that ". . . gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results. . ."

While we are aware that the strict rule applied in such cases as *Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199], has been modified in later decisions of our courts, it was said in *Barkis* v. *Scott, supra*, that section 3275 of the Civil Code presupposes that the party seeking relief is in default (which plaintiff Amoruso was), and that in order to secure relief under its terms

it is necessary for him to prove facts that will justify relief (which this plaintiff signally failed to do).

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 20, 1949.