[Civ. No. 21709.   Second Dist., Div. One.   Aug. 20, 1956.]

DAISY KELLEY, Respondent, v. OLYMPIC PHARMACY
(a Limited Partnership) et al., Appellants.

Sidney Fischgrund and Benjamin J. Goodman for Appellants.

Hoag & Galbally and Hallack W. Hoag for Respondent.

FOURT, J.—This is an appeal from a judgment entered in favor of the plaintiff in an action in ejectment, wherein it was decreed that: (1) plaintiff was entitled to immediate possession of the property leased by the plaintiff, as lessor, to defendants, as lessee, for a term of years starting December 10, 1948; (2) plaintiff was entitled to a forfeiture of the lease, and (3) plaintiff was entitled to recover from the defendants as damages for the use and occupation of the property the sum of $11,053.76, together with attorney's fees and costs.

Upon entry of judgment the defendants filed a written petition for relief against the forfeiture of the lease under section 3275, Civil Code, and the same was denied.

A fair résumé of the facts of the case is as follows: On or about November 28, 1948, respondent and appellant Wolf entered into an agreement of limited partnership for the operation of a pharmacy. Respondent was the limited partner, and Wolf was the general partner. A written lease was entered into on or about January 1, 1949, between respondent and appellants, having to do with certain property at 9101 West Olympic Boulevard, Beverly Hills, for a term of 10

years and 21 days, with an option of renewal for an additional five-year period, the rent for the option period to be not less than the average monthly rental paid by appellant during the last five-year period of the term. The rental payable by appellants was a percentage of the gross monthly business. There were other provisions in the lease as safeguards to protect the respondent in receiving the proper percentage rent.[1]

[1]The lease provided:

(a) A rental equivalent to four (4%) per cent of the gross monthly business from the demised premises, up to Fifteen Thousand ($15,000.00) Dollars, excluding cigarettes and pipe tobaccos, and three (3%) per cent on any gross monthly business done from the demised premises in excess of Fifteen Thousand ($15,000.00) Dollars, with a maximum monthly rental of Nine Hundred ($900.00) Dollars per month;

(b) Rental is payable on the 10th day of the month following the period for which the rental has accrued, and is required to be accompanied by a sworn statement of the lessee for the gross sales for the preceding month;

(c) Lessee agreed to use "certain National cash registers" then on the premises for the purpose of ringing and depositing sales during the entire term of the lease, which registers are required to be sealed "in a manner approved by lessor," and lessee agreed to register upon such cash registers all sales made upon the premises, and such registration is required to be made at the time the sale is made and receipt from the cash register showing the correct amount of purchase is required to be delivered to the purchaser at the time the purchase is made;

(d) Lessor is granted the right to examine and check the total of said cash registers daily, weekly, or monthly;

(e) Lessee agreed to keep a daily record of any and all sales made on credit, and to furnish lessor a statement thereof each month, which credit sales were to be accounted for in "the gross sales at the time of payment of said credit sales";

(f) Lessee agreed to keep daily dated detail strips from the cash registers, with the privilege of Lessor to inspect the same;

(g) One Thousand ($1,000.00) Dollars was deposited by Lessee with Lessor as security for the payment of the rental and faithful performance by the Lessee of the provisions of the lease;

(h) Lessor agreed to maintain the roof, exterior walls, and all underground plumbing;

(i) "The term 'gross sales' whenever used in this Lease shall be deemed to refer to and include as to any period all receipts from business done on the demised premises and all sales made and all receipts and/or sales for services rendered at, in, from or upon the said demised premises during such period by the Lessee and/or by any person or persons claiming through or under Lessee as sub-tenant, concessionnaire, licensee or otherwise, provided, however, that all sales made on credit shall be treated as cash sales as of the date payment therefor is made. Provided, however, that there may be deducted from the gross sales of any period the amount of any returns and/or exchanges from customers which are accepted and allowed during such period by the Lessee and/or any sub-tenant of the Lessee, and, provided further, that the amount of the gross sales for any period shall not be deemed to include the amount of any Federal, State, County or Municipal sales tax in respect of any sales in the demised premises during such period which is actually paid and/or payable by the Lessee and/or any sub-tenant of the Lessee to the

On December 5, 1951, respondent and an accountant employed by respondent requested of appellant Wolf an examination of appellants' records. Wolf refused permission and ordered respondent out of the premises. Thereafter, an examination of the books was made and it was found that certain cash register tapes and accounts receivable ledger pages were missing. Wolf stated to the respondent's accountant that he had destroyed certain ledger sheets. A notice signed by the respondent was handed to Wolf on or about October 15, 1952, wherein certain violations of the lease were charged. From that time until respondent commenced returning rental checks, the checks were received by respondent without prejudice, and upon stipulations with appellants' counsel, checks could be used without prejudice to any of the respondent's rights. On about November 30, 1953, a Miss Armstrong, an accountant for the respondent, presented herself at the store to examine the records and Wolf refused to permit her to commence such examination and told her to talk to his attorney. On about January 4, 1954, the accountant commenced the examination of the records with many interruptions and delays thereafter caused by Wolf or his accountant. Miss Armstrong was told by Wolf on or about February 4, 1954, that the accounts receivable sheets had been destroyed, although she had requested all of the books and records, cash register tapes, charge sale slips and accounts receivable subsidiary ledger for examination.

On or about July 19, 1954, a notice of violations of the

United States or to the State of California or the County of Los Angeles or the City of Beverly Hills in respect to such sales.''

(j) ''. . . that if default shall be made in the payment of rent hereinbefore specified to be paid or any part thereof, as aforesaid, or if default shall have been made in any of the covenants or agreements herein contained to be kept by said ·Lessee, it shall be lawful for said Lessor after ten (10) days written notice to the Lessee setting forth the default and requiring that the default be cured, to elect to declare said term ended, and to reenter the said demised premises or any part thereof, either with or without process of law. . . .''

(k) ''. . . and it is further expressly understood and agreed that the waiver by the Lessor of any default on the part of the Lessee in the prompt payment of an installment or installments of rent or in the observance, payment or performance of any of the provisions, terms or conditions hereof, shall not be deemed to be ·a waiver of the right of the Lessor to treat any other or subsequent default as operating to forfeit said Lease, and any said waiver shall not be deemed to excuse said Lessee in the prompt payment of any other installment or the prompt and faithful performance of the same or any other covenant in the future.''

lease was served by respondent on appellants. The notice set out, among other things, some of the violations of the lease, such as the destruction of the records, misrepresentation of gross sales, failure to include charge sales in the gross sale figure, failure to send monthly statements, failure to keep required records, which violations were charged to be deliberate and continuing at the time of the notice. The notice further stated that the defaults should be cured within 10 days if they could be, and if they could not be cured or lessee did not cure them, that the lessor would elect to declare the term of the lease ended and enforce lessee's removal from the premises. On about August 2, 1954, a notice that the appellants had not cured the defaults; that the lessor declared the term of the lease ended, and that repossession of the premises was demanded, was delivered to the appellants. Upon failure of the appellants to vacate the premises, this action was commenced to remove the appellants, to obtain damages for use and occupation and to obtain attorney's fees and costs.

Appellants attack the findings numbered III, IV, V, VI, VII, VIII, IX, and XIII, as being unsupported by any substantial evidence.

■ In finding number III the court found, among other things, the following:

". . . That the term 'gross sales' defined in said lease is deemed to refer to and include as to any period all receipts from business done on the premises and all sales made and/or receipts and/or sales for services rendered at, in, from or upon the said demised premises during such period by the lessee and/or by any person or persons claiming through or under lessee as sub-tenant, concessionnaire, licensee or otherwise, provided, however, that all sales made on credit shall be treated as cash sales as of the date payment therefor is made. Provided, however, that there may be deducted from the gross sales of any period the amount of any returns and/or exchanges from customers which are accepted and allowed during such period by the lessee and/or any sub-tenant of the lessee, and, provided further, that the amount of the gross sales for any period shall not be deemed to include the amount of any Federal, State, County or Municipal sales tax in respect of any sales in the demised premises during such period which is actually paid and/or payable by the lessee and/or any sub-tenant of the lessee to the United States or to the State of California or the County of Los

Angeles or the City of Beverly Hills in respect to such sales.

. . . . . . . . . . . . .

"That defendants violated said provision of the lease in that all wholesale sales made by said defendants were excluded from the gross sales in computing the rental due to plaintiff.

"That said defendants further violated this provision of the lease in that the defendants failed to record or place in their record of gross sales for the month of January, 1954, the sum of $1,018.73 which was received by the defendants during said month in payment of credit sales and defendants failed to compute or account for any percentage rental based on the inclusion of said sum of $1,018.73 in gross sales."

There was ample evidence to sustain and support the finding. Among other things, Mr. Lebe, one of appellants' witnesses, and the accountant for Wolf testified as follows:

"Q. (By Mr. Hoag) : Now, I think you stated in computing your net sales figure that you called gross sales, you did not consider wholesale sales in that figure, is that true?

"A. That is true, we made an endeavor not to include wholesale sales in that figure."

Miss Armstrong, a witness and accountant for the respondent, testified in substance that she had made a check on the charge accounts and found that a substantial number of such accounts had not been recorded in the cash register tapes.

Finding number IV states in part:

". . . That the defendants have violated this provision of the lease in that: (a) no sworn statement whatever of the gross sales for the preceding month accompanied the rental for the period January 1, 1949 to October 31, 1952; (b) that the sworn statements commencing with that of November 11, 1952 (plaintiff's Exhibit 5) refer to '. . . the net sales for the month (month inserted) as recorded in the books and records of Olympic Pharmacy total (amount inserted)', which statements continued to that of October 9, 1953 (plaintiff's Exhibit 20) ; and (c) that commencing with the sworn statement of November, 1953 (plaintiff's Exhibit 21), the sworn statements sent to the time of notice declaring term of lease ended (plaintiff's Exhibit 35) state: 'this is to certify that upon my information and belief that the net sales for the month of (month inserted) as recorded in the books and records of Olympic Pharmacy total (amount inserted)'."

There was testimony to the effect that there was no sworn statement as required by the lease sent for the period January 1, 1949, to October 31, 1952, and there was no evidence that any monthly statements were sent to the respondent from January 1, 1949, to October 31, 1952. Appellants admit, in substance, that there was such a default, but attempt to excuse it upon the grounds that the respondent waived any such right under the provisions of the lease. Appellants did not plead the affirmative defense of waiver, but saw fit to rely upon specific denials of any and all breaches or violations. There was obviously sufficient evidence to support the finding.

Finding number V found that the defendants violated the provision of the lease requiring certain two National Cash Registers to be on the premises and further requiring the cash registers to be sealed in a manner approved by the lessor. Wolf testified, among other things, that there were two registers in the place; that in 1949 one of them was taken out to be repaired and none was put in its place during such repair period. Mr. Wolf also testified as follows:

"Q. (By Mr. Hoag): Did you say the back cash register was out of the store for three weeks in 1949?

"A. I think it was in 1950, I am not sure of the date, but it was out of the store, yes."

It appears that there was sufficient evidence to sustain the finding.

Finding number VI found that the defendants violated the provision of the lease with reference to receipts because "receipts from the cash registers showing the correct amount of purchase oftentimes were not delivered to purchasers at the time the purchase was made, or at all." This finding is fully supported by the testimony of a witness who said that on July 19, 1954, he made a purchase at the store and did not receive a customer's receipt; that he made several purchases thereafter in July and August, 1954, paid cash, and got no receipt. The testimony was positive and it is difficult to see how the judge could have come to any other conclusion.

In finding number VII the court properly found that the defendants violated the provisions of the lease in that they failed to keep daily detailed strips, to wit: "defendants do not have strips for a period of 70 days during the fiscal year February 1, 1950 to January 31, 1951; for a period of 81 days during the fiscal year February 1, 1951 to January 31, 1952, and for a period of 28 days for the period February

1, 1952 to January 31, 1954. The defendants further violated these provisions of the lease by failing to date many of the strips; by commingling all strips to prevent inspection and by ordering plaintiff to stay out of the premises, said order being given by defendant Irving Wolf on December 5, 1951.''

Mr. Brown, one of the respondent's accountants, said in substance that several hundred of the tapes were undated; that about 70 tapes were missing for the period from February 1, 1950, to January 31, 1951; that about 80 tapes were missing for the period from February 1, 1951, to January 31, 1952. Miss Armstrong, another of the accountants of respondent, said that she found many of the tapes missing from February 1, 1952, to January 31, 1954.

Finding number VIII reads as follows:

''That under the terms of the aforesaid lease (plaintiff's Exhibit 1), the defendants agreed to keep a daily record of any and all sales which may be made on credit and to furnish plaintiff a statement thereof each month at the time and in conjunction with the furnishing of the sworn statement of gross sales mentioned in Finding IV. That the defendants violated this provision of the lease in that they destroyed all original charge slips showing customers' charges prior to the notice declaring term of lease ended (plaintiff's Exhibit 35) and have failed at all times to furnish the plaintiff with a monthly statement of the sales made on credit at the time and in conjunction with the furnishing of a sworn statement of gross sales, or at all. That the defendants have never at any time from January 1, 1949 to the delivery of the notice declaring term of lease ended (plaintiff's Exhibit 35) furnished plaintiff with a monthly statement of sales made on credit.

''That defendants violated this provision of the lease in that they destroyed ledger pages from the accounts receivable ledger and concealed other ledger pages from the accounts receivable ledger in order to prevent plaintiff from determining whether defendants had properly accounted for gross sales. That defendants further violated this provision of the lease by failing to include in their records the sum of $1,018.73 received by the defendants in payment of customers' accounts during the month of January, 1954. A further provision of the lease requiring sales made on credit to be accounted for in the gross sales at the time of payment was violated by defendants in that they failed to include said amount of $1,018.73 in their gross sales figures, or at all.''

■ The respondent testified that she had never received a statement of sales made on credit. Appellants attempt to excuse the omission in spite of the specific denial in their answer that there was such a violation and the fact that waiver was not pled. The provision of the lease with reference to this matter is clear and unambiguous and under such circumstances parol evidence was not admissible to change or explain the terms of the lease.

■ As to the part of the finding having to do with destroying the charge slips, the appellant Wolf himself stated:

"Q. (By Mr. Hoag): Isn't it true, Mr. Wolf, that Mr. Brown came to you and stated that he could not verify your accounts receivable due to the fact that there were so many missing pages and asked you where the accounts receivable ledger pages were and that you replied to him when an account was paid or when a sheet was filled up that you destroyed the ledger page?

"A. No, I told him I destroyed the charge slips but not the ledger page."

As to the ledger pages, Miss Armstrong and Mr. Brown stated that the pages in question were missing.

Finding number IX was to the effect that the accountant was refused access to the records on November 30, 1953, and that she was permitted to work only on certain days, and thereafter made unsuccessful efforts to examine the records. The record relates that repeatedly Miss Armstrong attempted to obtain certain records and she was met with many delays and interruptions.

Finding number XIII reads as follows:

"That, as more fully set forth in specific findings herein, the defendants failed to keep customary data, records and supporting papers normally used in conducting a drug business; that defendants destroyed various records and data normally preserved by such a business and attempted to delay and obstruct the plaintiff from making an examination of the store records."

Appellants contend that a judgment in an arbitration proceeding theretofore had is res judicata on the subject of maintenance of books and records by the defendants, and that the judgment in the arbitration case operated as an estoppel between the parties hereto. In the defendants' answer they pled the judgment of September 13, 1954, in the arbitration matter, and set forth that it operated as an estoppel against the plaintiff. The court found in the in-

stant case that the allegations of the defendants' affirmative defense were untrue, excepting that there was a judgment in the arbitration case.

In the trial appellants herein offered the finding of the board of arbitrators and the judgment in the arbitration case for identification by reference. It was not received in evidence. Appellants, however, made reference to the findings and judgment in the arbitration case in their brief, as did the respondent. It is stated that the court in the arbitration case made the following finding:

"That Daisy Kelley and Irving Wolf stipulated and agreed that no questions or issues relating to or arising out of the lease between Daisy Kelley as Lessor and the Olympic Pharmacy, a limited partnership, as Lessee, executed January 1, 1949, or the rights of lessor and lessee were to be submitted to the arbitrators and that any such questions or issues were specifically reserved from any consideration by said arbitrators. That the arbitrators exceeded their powers in disregarding the stipulation and in considering any questions or issues relating to the said lease, which action was prejudicial to the rights of Daisy Kelley."

"That no evidence whatever was offered by or on behalf of Irving Wolf, general partner, nor was there any evidence to support the additional issues raised by him for determination by arbitration, and it is true that the parties stipulated that no issues affecting the lease were proper under the arbitration proceedings."

It would appear that the issue of the lease was withdrawn from consideration in the arbitration case, and if so, then the rule of estoppel by judgment does not apply. (*United Bank & Trust Co.* v. *Hunt,* 18 Cal.App.2d 112, 115 [62 P.2d 1391, 64 P.2d 477]; *Barnes* v. *Dobbins,* 118 Cal.App.2d 808, 814 [258 P.2d 1112].)

Where the parties themselves stipulate that a particular issue be withdrawn, the judgment would not operate as an estoppel to the matter so withdrawn. (*Miller & Lux Inc.* v. *James,* 180 Cal. 38, 44 [179 P. 174].)

In any event, in the case at hand, the respondent sued in a different capacity and a judgment would not operate as an estoppel to the matter in question in this case. (Code Civ. Proc., § 1908; *Travis Glass Co.* v. *Ibbetson,* 186 Cal. 724, 729 [200 P. 595].)

Appellants further contend that the court erred in its ruling in reference to certain evidence. Appellants attempted

to introduce into evidence testimony to the effect that the plaintiff had requested and desired the defendants to keep their books and records in the same manner as kept by plaintiff before the execution of the lease. A proper objection to such testimony was sustained. ▓ The written lease is clear and unambiguous and extrinsic evidence of prior agreements or declarations are not admissible to add to, or vary the terms of the written instrument. (*Capitelli* v. *Sawamura,* 123 Cal.App.2d 169, 173 [266 P.2d 939] ; *Downer* v. *Buehrle,* 90 Cal.App.2d 719, 720 [203 P.2d 795].)

There were further rulings of the trial court which appellants contend were erroneous. However, we have carefully gone over each contention and have further gone over the record, and in our opinion there was no prejudicial error.

As heretofore set forth, the court ordered the lease terminated and cancelled. Shortly after the entry of judgment the appellants filed a petition for relief against the forfeiture under section 3275, Civil Code. The petition was opposed, and after a hearing the court denied the relief sought. We are unable to find in the record where appellants have made an unequivocal and positive tender of all the rents due. ▓ In order to secure the relief under the section it is necessary to plead and prove facts which justify relief. It was said in *Barkis* v. *Scott,* 34 Cal.2d 116, at page 120 [208 P.2d 367] :

"Section 3275 presupposes that the party seeking relief is in default, and in order to secure relief under its terms it is necessary for him to plead and prove facts that will justify its application." To the same effect are *Patten* v. *Pepper Hotel Co.,* 153 Cal. 460, 471 [96 P. 296] ; *Palo & Dodini* v. *City of Oakland,* 79 Cal.App.2d 739, 748 [180 P.2d 764], and *Taylor* v. *United States Fid. & Guar. Co.,* 86 Cal. App. 382, 390 [260 P. 898].

The obligations of the appellants under the lease were conditions to be performed in order for them to retain possession of the premises, and such obligations were continuing in character. The many violations and failures on the part of the lessees establish, in our opinion, that the trial court was correct in denying the petition for relief.

▓ Lastly, the appellants contend that the trial court abused its discretion in refusing to permit the defendants to amend their answer to plead waiver. Appellants' sole motion in this connection had to do with a claim of waiver by respondent of her right to receive monthly statements of

sales made on credit. The record indicates that there was no mention of waiver until the second day of the trial. Counsel for appellants, in his opening statement to the court said, in essence, that all of the allegations of the complaint about violations were figments of the landlord's imagination, based not on fact but on fiction, and that he would show by evidence that all of the obligations of the lease were performed. The respondent properly objected to any such an offered amendment under the circumstances. The allowance of amendments to pleadings during a trial is a matter very largely within the discretion of the trial judge. (*Phillips* v. *Mathews*, 90 Cal.App.2d 161, 164 [202 P.2d 796].)

The judgment and order are, and each is, affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied September 17, 1956, and appellants' petition for a hearing by the Supreme Court was denied October 17, 1956.